BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE COACHELLA VALLEY MOUNTAINS CONSERVANCY has requested an opinion on the following questions:
1. Where a member of a city council or county board of supervisors is appointed to sit as that body's representative on the governing board of the Coachella Valley Mountains Conservancy, may the appointee disclose to his or her appointing authority or its counsel information received in a closed session of the governing board?
2. Where the director of a state department is a member of the governing board of the Coachella Valley Mountains Conservancy by operation of law and designates an executive staff member to sit in his or her place, may the designee disclose to other department employees or department counsel information received in a closed session of the governing board?
 CONCLUSIONS
1. Where a member of a city council or county board of supervisors is appointed to sit as that body's representative on the governing board of the Coachella Valley Mountains Conservancy, the appointee may not disclose to his or her appointing authority or its counsel information received in a closed session of the governing board.
2. Where the director of a state department is a member of the governing board of the Coachella Valley Mountains Conservancy by operation of law and designates an executive staff member to sit in his or her place, the designee may not disclose to other department employees or department counsel information received in a closed session of the governing board.
 ANALYSIS
In 1990, the Legislature created the Coachella Valley Mountains Conservancy ("Conservancy") as a state commission within the Resources Agency, charged with acquiring lands and protecting natural resources in and around the Coachella Valley. (Pub. Resources Code, §§33500-33509) The Conservancy's governing board ("Board") is composed of 21 members who serve two-year terms. Public Resources Code section 33503 provides:
 "(a) The governing board of the conservancy consists of the following 21 voting members:
 "(1) The mayor or a member of the city council of each of the Cities of Cathedral City, Desert Hot Springs, Indian Wells, La Quinta, Palm Desert, Palm Springs, and Rancho Mirage, appointed by a majority of the membership of the respective city council of each city.
 "(2) The Chairperson of the Tribal Council of the Agua Caliente Band of Cahuilla Indians.
 "(3) One member of the Board of Supervisors of the County of Riverside, appointed by a majority of the membership of the board of supervisors.
 "(4) Three members chosen from the general public who reside within the conservancy's territory, one of whom shall be appointed by the Governor, one of whom shall be appointed by the Senate Committee on Rules, and one of whom shall be appointed by the Speaker of the Assembly.
"(5) The Secretary of the Resources Agency.
"(6) The Director of Fish and Game.
"(7) The Executive Director of the Wildlife Conservation Board.
"(8) The Director of Parks and Recreation.
"(9) The Director of Finance.
 "(10) The Vice President, Division of Agriculture and Natural Resources, of the University of California.
 "(11) The State Director for California of the United States Bureau of Land Management.
 "(12) The Regional Forester for the Pacific Southwest Region of the United States Forest Service.
 "(13) The Regional Director for the Pacific West Region of the National Park Service.
 "(b) Any state or federal official who is a member of the governing board and whose principal office is not within the territory of the conservancy may designate a member of his or her executive staff to vote on his or her behalf and otherwise discharge the duties of the member when the member is not in attendance. Notice of that designation shall be promptly communicated in writing to the chairperson of the conservancy.
 "(c) Each city council, the Tribal Council of the Agua Caliente Band of Cahuilla Indians, and the Board of Supervisors of the County of Riverside may appoint an alternate member from its respective entity to attend the governing board meetings and vote on behalf of the appointed member and otherwise discharge the duties of the member when the member is not in attendance. Notice of the designation shall be promptly communicated in writing to the chairperson of the conservancy."
The Board's meetings are subject to the requirements of the Bagley-Keene Open Meeting Act (Gov. Code, §§ 11120-11132; "Act"). (Pub. Resources Code, § 33509, subd. (a).)[1] The Act generally requires that all meetings of state bodies be open to the public (§ 11123, subd. (a)), with closed sessions allowed in limited circumstances (§ 11126). For example, a closed session may be held by a state body "to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning these matters would prejudice the position of the state body in the litigation" (§ 11126, subd. (e)(1)) or to meet "with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the state body to give instructions to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease" (§ 11126, subd. (c)(7)(A)).
The two questions presented for resolution concern the holding of a closed session by the Board to discuss pending litigation or the purchase of property. May a member of a city council or county board of supervisors appointed to sit as that body's representative on the Board disclose to his or her appointing authority or its counsel information received in a closed session of the Board? Where the director of a state department is a member of the Board and has designated an executive staff member to sit in his or her place, may the designee disclose to other department employees or department counsel information received in the closed session? We conclude that disclosure would be prohibited in both cases.
 1. Disclosure to Local Appointing Authority and its Counsel
In addressing the first question, we begin by noting that the statutes governing the Conservancy do not authorize the participation of a city council or county board of supervisors in the actions taken by the Board. Such local bodies have no veto power or right of approval with respect to the activities of the Conservancy, which is an independent state commission. (See Pub. Resources Code, §§ 33501,33507; cf. 81 Ops.Cal.Atty.Gen. 362, 364 (1998) [by statute, joint powers agency member may not vote on bond issuance absent prior specific authorization from public agency represented by member].)
Instead, each designated city council and the county board of supervisors is limited to appointing a single person to sit as a member of the Board. Once such an appointment is made, the appointee may vote independently from — and even contrary to the express wishes of — his or her appointing power. (See 83 Ops.Cal.Atty.Gen. 267, 268 (2000) [joint powers agency member may cast vote inconsistent with position taken by local legislative body that appointed the member].) The fact that the member is an appointee does not give the appointing power any standing to attend, participate in, or otherwise be involved in the Board's closed sessions. (See 83 Ops.Cal.Atty.Gen. 221, 224-225 (2000).)
We reject the suggestion that the city councils in question and the county board of supervisors may convene their own closed sessions to receive information given to their appointees during a closed session of the Board. Nothing in the Ralph M. Brown Act (§§ 54950-54963), which authorizes local public agencies to hold closed sessions in limited situations, or in the Public Resources Code suggests that these local bodies have any role to play in the Board's closed sessions.[2] And, furthermore, we find nothing in the Ralph M. Brown Act that would qualify the Board's litigation concerns or real estate negotiations as appropriate subjects for the local bodies' closed sessions; rather, a local body's closed — session discretion is limited to litigation involving the local body itself, not the Board, and to real estate transactions involving the local body's negotiators, not the Board's. (See §§ 54956.8, 54956.9.)[3]
Similarly, neither the Act nor the Public Resources Code allows for disclosure of information received in a closed session of the Board to the city attorneys of the cities in question or to the county counsel. Our opinion in 72 Ops.Cal.Atty.Gen. 159 (1989) does not support the contrary conclusion. There, we concluded that the Superintendent of Public Instruction could discuss with his legal counsel information received in a closed session of a state commission of which he was a member. His legal counsel, however, was also subject to the same statute that barred the Superintendent from disclosing the information. "This indicates that disclosures to the legal counsel would not be considered as `outside' disclosures by the Legislature, since the statute's coverage extends to the legal counsel as well." (Id. at p. 166.) Here, in contrast, neither the Act nor the Public Resources Code treats the city attorneys or the county counsel similarly to members of the Board.
For the foregoing reasons, we conclude that where a member of a city council or county board of supervisors is appointed to sit as that body's representative on the Board, the appointee may not disclose to his or her appointing authority or its counsel information received in a closed session of the Board.
 2. Disclosure to Other State Department Executive Staff Members or Department Counsel
We next consider whether our conclusion would be different where a member of the Board is a director of a state department, such as the Director of Fish and Game (Pub. Resources Code, § 33503, subd. (a)(6)), and designates an executive staff member to sit in his or her place. (Pub. Resources Code, § 33503, subd. (b).) May the designee disclose closed-session information to other department employees or department counsel? We conclude that our answer must remain the same: such disclosure would be prohibited.
Preliminarily, we note that the designee's authority to discuss closed-session information with his or her principal, who is the ex officio member of the Board, is not in question. As we concluded in 72 Ops.Cal.Atty.Gen. 159, supra, such a discussion with the Board member would be permissible, since the designee would not be "giving out" the information. In our 1989 opinion, we explained:
 "[W]e believe that the Superintendent is the Commission member even when he selects a designee to serve in his place. He acts through the designee and is responsible for all acts of the designee with respect to the Commission's activities. The participation by the designee at an executive session of the Commission may be considered as though the Superintendent were personally present. The designee exercises the powers of and is subject to the restrictions governing the Superintendent and does not have independent membership authority on the Commission.
 "Returning to the controlling language of subdivision (a) of section 44248, we find that it refers to a Commission member `who releases or gives out' information without proper authorization. To `give out' is `to make known to or as if to the public.' (Webster's Third New Internat. Dict. (1966) p. 960.) `Release' may be similarly defined. (Id., at p. 1917.)
 "Here, the Superintendent is not to be considered a member of the public but rather is the Commission member. The Superintendent's designee does not `release or give out' Commission information by disclosing the information to the Superintendent, a Commission member. The latter participates in the Commission's activities through his designee; disclosures between the two are outside the scope of section 44248." (Id. at pp. 164-165.)
The same analysis does not hold true for other department employees or department counsel; they are not members of the Board. The general rule is that closed — session access is permitted only to people who have "an official or essential role to play" in the closed meeting. (83 Ops.Cal.Atty.Gen., supra, at p. 225; see 82 Ops.Cal.Atty.Gen. 29, 33 (1999); 46 Ops.Cal.Atty.Gen. 34, 35 (1965).) The other employees of the state department and department counsel have no such role to play in a closed session of the Board. (See 83 Ops.Cal.Atty.Gen. 221, supra [mayor not entitled to attend closed session of city agency]; 82 Ops.Cal.Atty.Gen. 29, supra [alternate member of local commission not entitled to attend closed commission meeting even though commission and public would benefit].) Without the right to be present at a closed session of the Board, the other state department employees and department counsel would not qualify to receive closed-session information. (See 80 Ops.Cal.Atty.Gen., 231, 235-241 (1997); 76 Ops.Cal.Atty.Gen. 289, 290-291 (1993); cf. 85 Ops.Cal.Atty.Gen. 115, 122, fn. 4 (2002).) We note, however, that the Board's own staff and counsel would be available to provide advice to the Board members and their designees upon request.
Accordingly, in answer to the second question, we conclude that where the director of a state department is a member of the Board by operation of law and designates an executive staff member to sit in his or her place, the designee may not disclose to other department employees or department counsel information received in a closed session of the Board.
[1] Unless otherwise indicated, all further statutory section references are to the Government Code.
[2] We understand that one of the city councils represented on the Board requires all council members appointed to outside organizations to bring policy issues before the council for determination and instructions on voting. We assume that this can be accomplished without disclosing information obtained in a closed session of the Board.
[3] In 67 Ops.Cal.Atty.Gen. 111 (1984), we were asked whether the Ralph M. Brown Act's authorization to hold a closed session to discuss "pending litigation" permitted a county airport advisory commission to meet in closed session with the county counsel to discuss litigation involving airport matters in which the county board of supervisors was the named party. We reasoned that the attorney-client relationship was between the county counsel and the county as an entity, not merely its board of supervisors, and therefore, that "any county board, commission, committee, or officer having a legitimate official interest in a particular lawsuit may confer with counsel in an attorney-client relationship" in a closed session under the pending litigation exception. (Id. at p. 113.) That reasoning does not apply here, however, where the city councils in question and the county board of supervisors are not components of the Conservancy and are therefore not situated to invoke the pending litigation exception.